## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF PENNSYLVANIA

Michelle M. Murray                          )
267 South College Street                    )
Carlisle, Pennsylvania  17013               )
                                            )
    Plaintiff                            )
v.                                          )
                                            )
Debbie Shaw                                 )
24 8th Street N.E.                           )
Washington, D.C.  20002                     )
                                            )
    Defendant                            )
                                            )
Joscelyn Funnie                             )
206 Highfalcon Road                         )
Reisterstown, Maryland  21136               )
                                            )
    Defendant                            )
                                            )
Lisa Rein                                   )
512 Pershing Drive                          )
Silver Spring, Maryland  20910              )
                                            )
    Defendant                            )
                                            )
WP Company, LLC                             )
The Corporation Trust Company               )
Corporation Trust Center 1209 Orange St     )
Wilmington, DE 19801                        )
                                            )                    )
    Defendant                            )
                                            )
Faith Williams                              )
6914 Willow Street N.W.                     )
Washington, D.C.  20012                     )
                                            )
    Defendant                            )

Project on Government Oversight
Business Filings Incorporated
314 E Thayer Ave
Bismarck, ND 58501-4018

FILED
HARRISBURG, PA

OCT 2 4 2023

PER ___JBR___
DEPUTY CLERK

Civil Action No: 1:23-cv-01761

## COMPLAINT

Plaintiff, Michelle M. Murray ("Plaintiff"), hereby files *pro se* the following Complaint against Defendants Debbie Shaw, Joscelyn Funnie, Lisa Rein, WP Company, LLC d/b/a The Washington Post ("WaPo"), Fauth Williams and Project on Government Oversight ("POGO").

Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$11,000,000.00** or such greater amount as determined by the Jury, (b) prejudgment interest on the principal sum awarded by the Jury from the date of filing to the date of Judgment at the maximum rate permitted by law, (c) post-judgment interest at the maximum rate permitted by law (c) retraction of all improper statements and public apology, (d) injunction against further injury, and (e) costs – arising out of Defendants' misconduct, including defamation, defamation per se, negligent or tortious inference with contractual and business relationships and false light invasion of privacy.

## PARTIES

1.  Plaintiff is a private person who resides and works in Carlisle, Pennsylvania.

2.  Debbie Shaw is a private person who resides in Washington, D.C.

3.  Joscelyn Funnie is a private person who resides in Baltimore, Maryland.

4.  Lisa Rein is a private person who resides Sliver Spring, Maryland. At the relevant times, she was a reporter for the *Washington Post*, who according to her Twitter/X account covers the Federal Government in the Biden administration. Her email is Lisa.Rein@washingpost.com and Twitter/X handle is @Reinlwapo. As of October 22, 2023, Defendant Rein's Twitter/X account has 14,900 followers.

5.   Faith Williams is a private person who resides in Washington, D.C.  At the relevant times, she was the Director of the Effective and Accountable Government Program at *Project On Government Oversight*.

6.   WaPo is a (left-centered) Delaware limited liability company, whose sole member is Nash Holdings, LLC, a Delaware limited liability company. WaPo publishes its material on the internet, reachable by individuals across the world. According to WaPo, 63 million people visited its website in October 2022. According to one source, WaPo had 2.5 million digital subscribers around the world.

7.   POGO is a (left-centered) non-profit organization, incorporated in North Dakota, with a principle business in Washington, D.C. Like WaPo, POGO publishes its material on the internet, reachable by individuals across the world.

## JURISDICTION AND VENUE

5.   The Middle District of Pennsylvania has subject matter jurisdiction and personal jurisdiction over this action.

6.   Venue is proper in Middle District of Pennsylvania, where the tortious misconduct occurred and where Plaintiff suffered substantial damage.

7.   Pennsylvania state law governs.

## STATEMENT OF MATERIAL FACTS

19.   In June 2019, Plaintiff joined Office of Inspector General (OIG) at the Social Security administration (SSA) as a staff attorney, working in the Office of Strategy and Performance. Plaintiff has been employed continuously by the United States Federal Government since April 2005.

20.    At the time Plaintiff joined OIG, the Inspector General was referred to as a "Trump Appointee" though she had no direct ties to that administration other than being a registered Republican.

21.    In June 2019, Defendant Shaw was a Supervisory Attorney at OIG, working in the Office of the Counsel for Investigations and Enforcement ("OCIE"). Defendant Funnie, also an attorney, was the Senior Executive overseeing OCIE and supervising Defendant Shaw.

22.    In September 2019, Defendants Shaw and Funnie were placed in paid, non-duty status because they demonstrated a lack of candor when filing a motion to extend a deadline before an administrative legal tribunal, known as the Department of Appeals Board at the Health and Human Services Agency. Subsequently, Defendant Shaw, who was still in her probationary period, was moved out of the supervisory position and received a proposal for a 45-day suspension. Defendant Funnie's employment was terminated.

23.    At that time of those personnel actions, Plaintiff, a staff attorney, was not an employee who had the "authority to take, direct others to take, or approve any personnel action" with regard to either Defendant Shaw or Defendant Funnie. *See* 5 U.S.C. 2302(b).

24.    Defendants Shaw and Funnie exercised their legal rights to challenge those personnel actions before the Office of Special Counsel. When the Office of Special Counsel closed its investigation, Defendant Shaw exercised her legal rights to file an Individual Right of Action with the Merit Systems Protection Board ("MSPB").[1] Defendant Funnie filed an appeal regarding the termination of her employment with the MSPB.

---

[1] This Complaint does not concern Defendants Shaw's or Funnie's legal right to pursue corrective action before the Merit Systems Protection Board, including defamatory and false statements they made in that administrative legal tribunal under penalty of perjury. Such matters are considered privileged under Pennsylvania law. Moreover, this Complaint does not concern action that Defendants Shaw or Funnie took in their capacity as a federal employee; this Complaint only concerns matters taken in their private capacity in non-privileged settings. This background information is provided only for context.

25. In June 2021, Plaintiff was appointed to the position of the Chief Counsel for the Office for OIG. At all relevant times, Plaintiff worked remotely from her residence in Carlisle, Pennsylvania.

26. Pursuant to the Inspector General Act of 1978, as amended, Plaintiff was also designated and, at all relevant times, served as the Whistleblower Protection Coordinator for SSA. The role of the Whistleblower Protection Coordinator is to educate agency employees:

> (i) about prohibitions against retaliation for protected disclosures; and
>
> (ii) who have made or are contemplating making a protected disclosure about the rights and remedies against retaliation for protected disclosures, including—
>
>> (aa) the means by which employees may seek review of any allegation of reprisal, including the roles of the Office of the Inspector General, the Office of Special Counsel, the Merit Systems Protection Board, and any other relevant entities; and
>>
>> (bb) general information about the timeliness of such cases, the availability of any alternative dispute mechanisms, and avenues for potential relief;

5 U.S.C. 403(d)(1)(C).

27. During litigation, Defendant Shaw, by and through her attorney, Michael Kator, threatened Plaintiff's livelihood and reputation. Thereafter, Defendant Shaw set out on a campaign to defame Plaintiff, interfere with Plaintiff's contractual and business relations and publicize Plaintiff in a false light. Defendant Shaw knowingly and willfully, with malice, used and conspired the other Defendants to engage in defamatory acts, interfere with Plaintiff's contractual and business relations, and publicity placing Plaintiff in a false light.

28. Specifically, on August 6, 2021, during a deposition, Defendant Shaw threatened:

BY MR. KATOR:
| | | |
|---|---|---|
| 5 | Q. | Okay. And are you currently serving as a |
| 6 | | Whistleblower Protection Coordinator at OIG? |
| 7 | A. | I am the whistleblower for Social Security |
| 8 | | Administration employees. I am the coordinator. |
| 9 | Q. | Would it be a problem, matter if you were implicated |

10              in a whistleblower retaliation case?

*See* Exhibit 1.

29. Because of intentional false statements of fact and law by Defendants Shaw and Funnie, and the attorney Micheal Kator, Defendant Shaw received a favorable initial decision from a MSPB staff attorney known as administrative judge. The administrative judge concluded Defendant Shaw had established by a preponderant of evidence that she made a protected disclosure and that the protected disclosure was a contributing factor in the personnel action. Further, the administrative judge concluded that the agency had failed to meet its burden to prove by clear and convincing evidence it would have taken the same action in absence of the protected disclosure. The decision DID NOT – because it could not as a matter of law or fact - find that Plaintiff "retaliated" against Defendant Shaw. *See* Exhibit 2.

30. Defendant Funnie had previously settled her complaint with OIG. That settlement agreement between SSA OIG and Defendant Funnie contained a no-fault provision.

31. A finding of "retaliation" is serious business misconduct in the Federal Government. It is a Prohibited Personnel Practice. *See* 5 U.S.C. 2302. Penalties for committing a Prohibited Personnel Practice include "removal, reduction in grade (demotion), debarment from federal employment for up to five years, suspension, reprimand, a fine of up to 1,000.00 or some combination of these penalties." *See* https://osc.gov/Services/Pages/PP (last visited October 22, 2023).

6

32.    Following the issuance of the initial decision, Defendants Shaw and Funnie intentionally
       and willfully, with malice, used and conspired with Defendants Rein and WaPo[2] to publish
       a knowingly defamatory statement and other statements for the purpose of interfering with
       Plaintiff's contractual and business relations and bring publicity placing Plaintiff in a false
       light.

33.    Importantly, the first series of articles on May 20, 2022, May 21, 2022 and June 2, 2022
       published by Defendants Rein and WaPo immediately following the issuance of the initial
       decision DID NOT refer to Plaintiff. *See* Exhibit 3.

34.    The first article from May 20, 2022, was republished on the Charles Hall Blog, "Social
       Security News." Mr. Hall is a renowned blogger of all matters related to SSA, and is
       followed by 1000s of SSA employees, private representatives and the public. There were
       repeated vicious and unfounded comments about Plaintiff in the "Anonymous" comments,
       as well as other staff in Plaintiff's office. Upon information and belief, Defendants Shaw
       and Funnie, and other conspirators were behind these posts. *See* Exhibit 4. The comments
       were so prolific that Mr. Hall subsequently blogged, "I can't say how many different people
       are commenting but there are clearly some very angry people at OIG with stories to tell.
       I've never seen anything like this. It's really exceptional." *Id.*

35.    On a date soon after the initial decision, Plaintiff was in the office pulling documents. On
       that date, Defendant Shaw was conversing with another OIG employee, Diane Dona, over
       the telephone. Ms. Dona had the phone on speaker at a very loud volume. This conversation
       occurred while they were on duty time. Defendant Shaw was regaling the findings of the

---

[2] It is unknown to what extent that Attorney Michael Kator was involved in the tortious conduct. Plaintiff
reserves her right to add Attorney Kator as a Defendant should sufficient evidence arise during discovery,
or otherwise report him to the bar for significant violations of the D.C. professional rules of conduct.

administrative judge from the initial decision. Ms. Dona asked specifically about any findings related to Plaintiff. Defendant Shaw said something to the effect that the administrative judge DID NOT find that Plaintiff had retaliated against her, but noted that Plaintiff was a part of the Immediate Office. Defendant Shaw commented that at that point, everyone, to include Plaintiff, would have to be fired, and that she would force the attorneys that Plaintiff had hired to do CMP work because they were not needed.

36.   Plaintiff was not fired.

37.   Approximately five months after the initial decision was issued and three articles later, on October 25, 2022, Defendants Rein and WaPo published an article titled, "Social Security whistleblowers say they've been sidelined." *See* Exhibit 6. This article informed the public that Defendants Shaw and Funnie "faced ongoing backlash from their supervisors for speaking out." In the article, the following statements appeared:

> Ennis' staff has appealed the ruling to the three-member board of the merit systems office, effectively putting the judge's order on hold, with the exception that Shaw was returned to her GS-15 rank. Ennis's chief counsel, Michelle Murray - one of the management officials the judge found had retaliated against Shaw - wrote and signed the appeal and is now her second-line supervisor, controlling her work assignments, requests for training and other aspects of her job, according to Shaw.

> Murray also serves as coordinator of Social Security's whistleblower protection program, according to the inspector general's website. She declined to comment for this story.

*See* Exhibit 6.   The article then went on to "detail," among other things, how Defendant Shaw was reportedly "limited to administrative, nonlegal busywork.[3] Her colleagues were

---

[3] It is noted that Defendant Shaw released privileged and confidential attorney client information, without permission of the client, to Defendants Rein and WaPo, who in turn included it in the article. Specifically, they reported that, Defendant Shaw "was directed to write a legal opinion on the soundness of starting a book club to improve morale on Ennis's staff." *Id.*

directed to document anything she said about her case or other concerns and report it back to management, she said." *Id.* Additional items were reported as facts – not opinions- to include that she "was reprimanded for helping colleagues."[4] *Id.*

38.   This article featured prominently on Defendant WaPo's landing page on its website. Defendant Rein retweeted the article through her account on Twitter/X.

39.   Charles Hall immediately posted a blog linking to the article titled, "Hardly A Surprise but Really Dumb." *See* Exhibit 7.

40.   Plaintiff Murray contacted Defendant WaPo on five occasions following the release of this article seeking a correction and informing them of her intent to sue for defamation, including October 25, 2022, October 26, 2022, October 28, 2022, November 1, 2022 and November 8, 2022. See Exhibit 8. Defendant WaPo did not respond to any of Plaintiff's requests.

41.   Defendants WaPo and Rein pretended to follow established reporting etiquette. On October 20, 2022, Defendants WaPo and Rein wrote to OIG stating, ". . . my story has a line near the bottom that mentions chief counsel Michelle Murray is Deborah Shaw's second line supervisor even as she was a fact witness in her case and wrote/signed the appeal of the MSPB ruling in her favor." *See* Exhibit 9. Dishonest at best, and supports fully that these tortious actions were undertaken by Defendants Shaw, Funnie, WaPo and Rein with knowingly and intentional malice.

42.   In so stating as a matter of fact that Plaintiff was "one of the management officials the judge found had retaliated against Shaw," Defendants Shaw, Rein and WaPo knowingly

---

[4] In the Federal Government, a reprimand is an official disciplinary action recorded on an employee's official personnel records. Contrary to the representations of Defendants Shaw, Rein and WaPo, discovery will establish that Defendant Shaw was never "reprimanded."

and willfully, with malice, engaged in defamation and defamation per se. This statement harmed the reputation of Plaintiff in the business community and deterred third persons from dealing with her. It has forever branded Plaintiff as a nefarious "retaliator." *See* Exhibit 10 (business partner refuses to participate in educational forum citing the WaPo article as one of the bases).

43.    Additionally. all three Defendants were in possession of the initial decision, which confirmed that the judge DID NOT find that Plaintiff "retaliated against Shaw." In that regard, Defendants Shaw, Rein and WaPo knowingly and willfully, with malice, or with reckless disregard publicized Plaintiff in a false light.

44.    Separately, the whole article publicized Plaintiff in a false light by knowing or recklessly publishing selective pieces of true information to imply that Plaintiff, as the second line supervisor, engaged in continual "retaliation" by "sidelining" Defendant Shaw.

45.    Lastly, the reference to the fact that Plaintiff serves as the SSA Whistleblower Protection Coordinator was intended to have Plaintiff stripped of this designation and the accompanying job duties. In this regard, there was tortious or negligent interference with Plaintiff's business and contractual relationships.

46.    Upon information and belief, Defendant Shaw defamed Plaintiff at various public events, including a National Whistleblower Appreciation Day at the National Whistleblower Center on July 27, 2023, as well as at least one other public event.[5]

47.    Defendant Rein retweeted the October 25, 2022 article on December 2, 2022, at 12:53pm. *See* Exhibit 11. This was an additional action of defamation and defamation per se.

---

[5] Discovery is needed to ferret out the tortious conduct of Defendant Shaw as well as the supporting organizations. Plaintiff reserves the right to amend this Compliant to include additional defamatory or other tortious conduct of Defendant Shaw and those organizations, if appropriate.

48. As Defendants Shaw and Funnies had not yet achieved their goal of having Plaintiff fired, they escalated their efforts to another organization, the Project on Government Oversight ("POGO").

49. On July 31, 2023, Defendants Shaw, Funnie, Williams and POGO knowingly and willfully, with malice, or with reckless disregard publicized Plaintiff in a false light. The article, "Trouble at the Social Security Administration Watchdog," was highly critical of Inspector General Gail Ennis (Trump-Appointee) and notes that "reports of whistleblower retaliation continue against a backdrop of disfunction." *See* Exhibit 12.

50. This article featured prominently on Defendant POGO's landing page on its website when first released. Defendant POGO retweeted the article through its account on Twitter/X.

51. Charles Hall republished the article on August 16, 2023. *See* Exhibit 13.

52. It restates all of the same inappropriate statements included in Defendants Rein and WaPo's articles, including a link to the October 25, 2022 article at issue in this matter. It states as a matter of fact, Defendants Funnie and Shaw who were "trying to protect the integrity of the program faced ongoing retaliation" and that "Shaw and Funnie have paid a high price for exposing waste, fraud, and abuse at the Social Security Administration, and they have not been whole." Defendant Williams and POGO state that Defendant Shaw "had been the victim of prima facie whistleblower retaliation by the OIG." Further:

> The judge ordered the agency to reinstate [Defendant Shaw] to her previous position and retore her back pay and benefits. However, the inspector general's office appealed the ruling. (The office's Chief Counsel, Michelle Murray, is responsible for the appeal, and she is also Shaw's second-line supervisor and coordinator of the agency's whistleblower protection program.) The appeal means that much of this remedy has been put on hold until Shaw's case heard, which could take years, as the MSPB is facing a huge appeals backlog.
>
> Shaw reported that since returning to work, she has been denied projects in her area of expertise and forced to do nonlegal busy work,

> and that her colleagues were instructed to document anything she said related to her case and report it to management.

*See* Exhibit 12. The reader is, again, left with the understanding that Plaintiff engaged in constant and consistent retaliatory actions against Defendant Shaw, to include doing her job by representing the organization in a due process right to appeal an initial decision. This is the essence of publicizing someone in a false light.

53. Defendants Williams and POGO did not ask Plaintiff to comment on this article.

54. Upon information and belief, all Defendants were in possession of the initial decision, which confirmed that the judge DID NOT find that Plaintiff "retaliated against Shaw." In that regard, Defendants Shaw, Funnie, Williams and POGO knowingly and willfully, with malice, or with reckless disregard publicized Plaintiff in a false light.

55. Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in its possession. Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of the Defendants, their agents and other third-parties support this Complaint, and reserves its right to amend this Complaint upon discovery of additional instances of Defendants' wrongdoing.

## COUNT I: DEFAMATION

1. Plaintiff hereby incorporates Paragraphs 1- 52.

2. Plaintiff further alleges Defendants Shaw, Funnie, Rein, WaPo, Williams and POGO:

   a. Made defamatory statements about Plaintiff engaging in retaliation – a serious business misconduct;

   b. Directed those defamatory statements about Plaintiff;

   c. Publicized those defamatory statements in the WaPo and POGO, and caused republications in multiple forums including the Charles Hall Blog;

d.  Used words that caused the recipients to understand that it was applied to Plaintiff;

e.  Used words that caused the recipients to understand the defamatory meaning of the words;

f.  Caused Special harm to Plaintiff; and

g.  Abused a conditionally privileged occasion.

## COUNT II: DEFAMATION PER SE

1.  Plaintiff hereby incorporates Paragraphs 1- 52 and Count I.

2.  Plaintiff further alleges Defendants Shaw, Funnie, Rein, WaPo, Williams and POGO:

    a.  Used defamatory words that convey serious business misconduct.

## COUNT II: NEGLIGENT TORTIOUS INTERFERENCE

1.  Plaintiff hereby incorporates Paragraphs 1- 52.

2.  Plaintiff further alleges Defendants Shaw, Funnie, Rein, WaPo, Williams and POGO:

    a.  Negligently interfered with Plaintiff's contractual arrangement of employment with the Federal government and business relations;

    b.  Had reckless or intend, and malice, to harm; and

    c.  Caused actual damages.

## COUNT III: TORTIOUS INTERFERENCE

1.  Plaintiff hereby incorporates Paragraphs 1- 52.

2.  Plaintiff further alleges Defendants Shaw, Funnie, Rein, WaPo, Williams and POGO:

    a.  Intentionally interfered with Plaintiff's contractual arrangement of employment with the Federal government and business relations;

    b.  Had intend, and malice, to harm; and

    c.  Caused actual damages.

## COUNT IV: FALSE LIGHT INVASION OF PRIVACY

1. Plaintiff hereby incorporates Paragraphs 1- 52.

2. Plaintiff further alleges Defendants Shaw, Funnie, Rein, WaPo, Williams and POGO:

   a. Placed Plaintiff in a false light that is highly offensive to a reasonable person; and

   b. Defendants had knowledge of or acted int reckless disregard as to the falsity of the publicized matter and the false light in which they placed Plaintiff.

## CONCLUSION AND REQUEST FOR RELIEF

As a direct result of Defendants' tortious conduct, Plaintiff has suffered irreparable harm and damages, including, but not limited to, loss and injury to her business, good will, lost future earning capacity, damage and injury to reputation (past and future), emotional damages, physical injuries, costs, and other out-of-pocket expenses in the sum of $10,000,000.00 or such greater amount as is determined by the Jury.

WHEREFORE, Plaintiff respectfully requests the Court to enter Judgment against the Defendants as follows:

A.   Compensatory damages in the amount of $10,000,000.00 or such greater amount as is determined by the Jury;

B.   Punitive damages in the amount of $1,000,000,000.00 or the maximum amount allowed by law;

C.   Prejudgment interest from October 24, 2023 until the date Judgment is entered at the maximum rate allowed by law;

D.   Post-judgment interest at the maximum rate allowed by law;

E.   Immediate retraction from all articles and a public apology;

F.   An Injunction against all Defendants precluding further injury; and

G.      Such other relief as is just and proper.


**TRIAL BY JURY IS DEMANDED**

DATED:        October 24, 2023


Michelle M. Murray, pro se